**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION**

| | | |
|---|---|---|
| **JANICE CARTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.: 1:23-cv-00007** |
| | ) | |
| **WELLS FARGO BANK, NATIONAL ASSOCIATION,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff, Janice Carter, filed suit against Wells Fargo Bank, National Association ("Wells Fargo") alleging a violation of the Uniform Commercial Code ("UCC") and negligence after losing her life savings in a fraud scheme. Dkt. 12. Wells Fargo moves to dismiss Carter's Amended Complaint, arguing that her claim for violation of the UCC fails as a matter of law and that UCC Article 4A preempts her negligence claim. Dkt. 14. I **GRANT** the motion to dismiss.

### I.     Complaint

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556). I accept all factual allegations in the complaint as true and draw all reasonable inferences in Carter's favor as the plaintiff. <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007). Legal conclusions, however, are not entitled to the same presumption of truth. <u>Ashcroft</u>, 556 U.S. at 678; <u>Twombly</u>, 550 U.S.

at 556 (noting that while detailed factual allegations are not required, a plaintiff must still provide more than labels, conclusions, or a "formulaic recitation of the elements of the cause of action").

Carter alleges in her Amended Complaint that she was a customer at Wells Fargo and was contacted in May 2022 by "a fraudster posing as Wells Fargo's fraud department." Dkt. 12 at 2. The fraudster allegedly accessed Carter's Wells Fargo account and made four transfers from her account in May 2022: $24,585 on May 5, $24,830 on May 9, $24,612 on May 10, and $48,530 on May 13. Id. at 2–3. The fraudster also allegedly convinced Carter to make five wire transfers in person at a Wells Fargo branch bank from May to July 2022: $20,400 on May 20, $155,000 on May 24, $50,000 on June 6, $330,000 on July 6, and $40,000 on July 12. Id. at 3. Carter alleges that she "made these transfers under the belief that she was protecting her hard-earned money from hackers of the Wells Fargo system." Id. Carter alleges that she had never initiated a wire transfer previously and that Wells Fargo "knew or should have known that these wire transfers were part of a social engineering fraud[.]" Id. Because of the transfers, Carter allegedly lost her life savings. Id. Carter also alleges that on July 12, 2022, Wells Fargo allowed a $10,000 cash advance made by the fraudster on Carter's expired Wells Fargo Propel American Express card. Id. In total, Carter allegedly lost $727,957. Id. at 5.

Carter alleges a violation of UCC Article 4A, codified at Va. Code § 8.4A-202.[1] Id. at 4. Carter argues that Wells Fargo owed her a duty to authorize and verify wire transfers, that Wells Fargo's procedures were not commercially reasonable under the circumstances, and that Wells Fargo breached its duties by allowing the wire transfers when Wells Fargo knew or should have known that Carter was being defrauded. Id. Carter also alleges negligence claiming that Wells

---

[1] The UCC is a uniform act governing the law of sales in all fifty states.

Fargo owed a common law duty to authorize and verify wire transfers and that Wells Fargo breached that duty by allowing the wire transfers to be sent when Wells Fargo knew or should have known that Carter was being defrauded. Id. at 4–5. Carter seeks $727,957 in damages plus costs and attorney's fees. Id. at 5.

## II.     Analysis – UCC Violation (Count I)

UCC Article 4A governs funds transfers, which are a "series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order." Va. Code § 8.4A-104. "Whether the bank or customer bears the risk of loss for a fraudulent wire transfer is determined by the interlocking provisions" of Va. Code § 8.4A-202, § 8.4A-203, and § 8.4A-204. Essilor Int'l SAS v. J.P. Morgan Chase Bank, N.A., No. 22-cv-3361, 2023 WL 35176, at *7 (S.D.N.Y. Jan. 4, 2023). A bank may avoid responsibility for fraudulent transfers if the transfer is "authorized" under Va. Code § 8.4A-202(a) or "effective" under Va. Code § 8.4A-202(b). Va. Code § 8.4A-204. As it relates to authorization, Va. Code § 8.4A-202(a) provides that "[a] payment order received by the receiving bank is the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency." As it relates to effectiveness, Va. Code § 8.4A-202(b) provides that

> "[i]f a bank and its customer have agreed that the authenticity of payment orders issued to the bank in the name of the customer as sender will be verified pursuant to a security procedure, a payment order received by the receiving bank is effective as the order of the customer, whether or not authorized, if (i) the security procedure is a commercially reasonable method of providing security against unauthorized payment orders, and (ii) the bank proves that it accepted the payment order in good faith and in compliance with the security procedure and any written agreement or instruction of the customer restricting acceptance of payment orders issued in the name of the customer."

Va. Code § 8.4A-202(b). Wells Fargo argues in its motion to dismiss that Carter's claim for violation of the UCC fails as a matter of law because Carter "does not allege the existence of any agreement between herself and Wells Fargo regarding specific security procedures, and therefore, Va. Code § 8.4A-202(b) does not apply." Dkt. 19 at 4. Carter argues that her claim is valid because she did not authorize the transfers and because commercial reasonableness is an affirmative defense which Wells Fargo must argue and cannot use to its advantage on a motion to dismiss. Dkt. 19 at 4.

In her Amended Complaint, Carter states that "the fraudster was able to access [her] account and make . . . online electronic wire transfers from her account[.]" Dkt. 12 at 2. The fraudster allegedly further "convinced [Carter] to make five different wire transfers . . . in person at the Wells Fargo branch bank." Id. at 3. The fraudster also allegedly "made a $10,000 cash advance from [Carter's] Wells Fargo Propel American Express card which had expired in June of 2022." Id. In a footnote in its motion to dismiss, Wells Fargo argues that [t]here is no dispute that Plaintiff authorized the in-person wire transfers" because "Plaintiff admits she authorized the later alleged wire transfers by making the transfers in-person at a Wells Fargo branch." Dkt. 14 at 6, n. 3. In its reply brief, Wells Fargo further articulates its argument[2] that these were "authorized by [Carter] as the fraudster gained access to her account via social engineering under her mistaken belief that she was providing access to protect the money in the account." Dkt. 20 at 3. As it relates to the in-person transfers, Wells Fargo argues that "[t]he allegation that [Carter] made the transfers at the behest of someone else does not change the fact that [she] authorized

---

[2] "The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered." Clawson v. FedEx Ground Package Sys., Inc., 451 F. Supp. 2d 731, 734 (D. Md. 2006) (citing United States v. Williams, 445 F.3d 724, 736 n. 6 (4th Cir. 2006)). "However, the power to decline consideration of such arguments is discretionary, and courts are not precluded from considering such issues in appropriate circumstances." Id. I will not dismiss Carter's claims based on the arguments raised for the first time in Wells Fargo's reply. Accordingly, Carter will not be prejudiced by my consideration of those arguments.

4

them." Id. Carter maintains that the wire transfers were not authorized because "every action was a result of the fraudster's scheme." Dkt. 19 at 4.

Carter does not allege sufficient facts to state a claim for relief that is plausible on its face. Iqbal, 556 U.S. at 678. To succeed on her claim for a refund, Carter must show that the wire transfers were neither authorized nor effective. Carter only alleges that the fraudster made electronic wire transfers,[3] convinced Carter to make wire transfers, and took a cash advance from Carter's Wells Fargo Propel American Express card. Carter does not allege that the transactions were not authorized and does not provide sufficient facts to plausibly establish that Wells Fargo is liable to refund the transferred amounts. Id. Accordingly, Carter has failed to state a cause of action under the UCC, and I grant the motion to dismiss as it relates to this count.

### III.    Analysis – Negligence (Count II)

UCC Article 4A provides a customer, such as Carter, a remedy for acceptance of an unauthorized and ineffective payment order. See Va. Code § 8.4A-204. Article 4A is "intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article." Va. Code § 8.4A-102, UCC Comment. "'While Article 4A should be the first place parties look for guidance when they seek to resolve claims arising out of a funds transfer, the article has not completely eclipsed the applicability of common law in the area.'" Schlegel v. Bank of America, N.A., 271 Va. 542, 552 (2006) (quoting Centre-Point Merchant Bank Ltd. v. American Express Bank Ltd., 913 F. Supp. 202, 206 (S.D.N.Y. 1996) (internal quotation marks omitted)). "The exclusivity of Article 4A is restricted to situations that are covered by particular provisions of the Article and that principles of law and equity may be applied to disputes relating to funds transfers so long as those

---

[3] Carter alleges a "scheme of social engineering" and makes only conclusory allegations that the fraudster gained access to her account but does not make any allegations as to *how* the fraudster gained access to her account.

principles do not create rights, duties, or liabilities inconsistent with those stated in the Article." Schlegel, 271 Va. at 553 (internal quotation marks omitted).

Here, Carter asserts a negligence claim against Wells Fargo for the nine allegedly unauthorized and ineffective payment orders. Section 8.4A-204 addresses a receiving bank's liability if it accepts a payment order that is not authorized and not effective under Section 8.4A-202. The alleged unauthorized and ineffective payment orders for which Carter seeks reimbursement are covered by the particular provisions of Section 8.4A. "In other words, to allow [Carter] to proceed on [her] common law [claim] with regard to the unauthorized payment orders would create rights, duties and liabilities inconsistent with those stated" in Section 8.4A. Schlegel, 271 Va. at 553 (internal quotations marks omitted).[4] Accordingly, Carter has failed to state a common law negligence cause of action, and I grant the motion to dismiss as it relates to this count.

### IV.   Conclusion

I find that Carter has failed to state a claim under the UCC and Va. Code § 8.4A-202 and has failed to state a common law negligence claim. Accordingly, I **GRANT** Wells Fargo's motion to dismiss. Counts I and II are **DISMISSED WITHOUT PREJUDICE**, and because Carter's pleading deficiencies may be cured by amendment, she is given leave to file a Second Amended Complaint within 14 days of this Memorandum Opinion. See Goode v. Cent. Va. Legal Aid. Soc'y, Inc., 807 F. 3d 619, 628 (4th Cir. 2015).

It is so **ORDERED**.

---

[4] Other jurisdictions have addressed preemption as it relates to negligence under the UCC and the common law and reached a similar conclusion. See Peter E. Shapiro, P.A. v. Wells Fargo Bank N.A., 795 F. App'x 741, 750 –51 (11th Cir. 2019); Mar-Check, Inc. V. Mfrs. & Traders Co., No. GJH-18-3765, 2019 WL 3067501, at *6 (D. Md. July 11, 2019); ReAmerica, S.A. v. Wells Fargo Bank Int'l, No. 04-5233, 2008 WL 7811571, at *7 (S.D.N.Y. Mar. 18, 2008).

Entered:  June 14, 2023

*Robert S. Ballou*

Robert S. Ballou
United States District Judge