IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| JANICE CARTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:23cv00007 |
| ) | |
| WELLS FARGO BANK, NATIONAL ) | |
| ASSOCIATION, ) | |
| ) | |
| Defendant. ) | |

## SECOND AMENDED COMPLAINT

Plaintiff Janice Carter ("Plaintiff" or "Carter"), for her Amended Complaint against Wells Fargo Bank, National Association (Defendant or "Wells Fargo") alleges and states as follows:

## INTRODUCTION

1. Janice Carter was a consumer customer at Wells Fargo Bank at the time of the events alleged in this Amended Complaint.

2. Carter was a victim of fraud and as a result, a fraudster made several electronic fund transfers from her accounts in May of 2022.

3. Wells Fargo has violated the Uniform Commercial Code, Virginia Code § 8.4A-202 by holding Carter liable for these fraudulent transfers.

4. Plaintiff brings the present action for the damages caused by Wells Fargo.

## PARTIES

5. Janice Carter is a citizen of the Commonwealth of Virginia, and resides in the Smyth County, Virginia.

6. Defendant Wells Fargo, is a Federal Bank with its principal office in Sioux Falls, South Dakota.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. § 1332, which provides diversity jurisdiction, and 28 U.S.C. § 1367, supplemental jurisdiction.

8. The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

9. Venue properly lies in this judicial district and is proper in accordance with 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the underlying claims took place in the Western District of Virginia, Abingdon Division.

## FACTS

10. In May 2022, Carter was contacted by a fraudster posing as Wells Fargo's fraud department.

11. Through a scheme of social engineering, the fraudster was able to access Carter's account and make the following online electronic wire transfers from her account ending in 7880:

    5/5/22    $24,555.00 + $30 fee = $24,585.00

| | | |
|---|---|---|
| 5/9/22 | $24,800.00 + $30 fee = | $24,830.00 |
| 5/10/22 | $24,582.00 + $30 fee = | $24,612.00 |
| 5/13/22 | $48,500.00 + $30 fee = | $48,530.00 |

12.   Plaintiff was contacted by phone by "Martin" who identified himself to Plaintiff as Special Agent of the Wells Fargo Bank Fraud Department.  Martin explained to Plaintiff that her financial information, social security number and other information had been compromised.   The only remedy according to Martin was for Plaintiff to follow his instructions to remove money from the "compromised" accounts, move them to a secure account, then transfer the money back to newly formed accounts at Wells Fargo.

13.   As the initial step, Martin told Plaintiff that she needed online banking.  Plaintiff never had online banking prior.  Martin set up online banking on Plaintiff's accounts.  Plaintiff never gave Martin her login or password.

14.   Once Martin had set up online banking, he initiated the electronic wire transfers in Paragraph 11 to "Cristian Felipe Villamil Mogolon."

15.   Plaintiff did not authorize these transfers.  Plaintiff did not make a keystroke, click a button, sign a form, agree or otherwise discuss these transfers with Wells Fargo.  Martin acted fraudulently and not as agent of Plaintiff.

16.   As part of the fraudulent scheme, the fraudster convinced Plaintiff to also make five different wire transfers.  Plaintiff made the following wire transfers in person at the Wells Fargo branch bank:

3

| | |
|---|---|
| 5/20/22 | $20,400.00 |
| 5/24/22 | $155,000.00 |
| 6/6/22 | $50,000.00 |
| 7/6/22 | $330,000.00 |
| 7/12/22 | $40,000.00 |

17. Plaintiff made these transfers under the belief that she was protecting her hard-earned money from hackers of the Wells Fargo system. Plaintiff timely notified Wells Fargo of this breach and demanded that the transfers be reversed.

18. At the Marion, Virginia Wells Fargo branch, on May 2, 2022, Mima Castro-Paz assisted Plaintiff, on May 24, the Branch Manager Lynne Gardner assisted Plaintiff, and on June 6, July 6 and July 12, Misty Kelly assisted Plaintiff.

19. During these conversations to initiate the wire transfers it was clear that Plaintiff was being scammed and was not authorizing the wire transfers. She stumbled over answers even with the coaching that the fraudster, Martin, had instructed her to follow in order to do what she thought would make her money safe.

20. Plaintiff was instructed to wire funds to Coinflip through the now infamous Silvergate Bank. Wells Fargo representatives asked Plaintiff each time if she was familiar with this company and she said "no" each time. Plaintiff could not articulate to Wells Fargo employees why sums- particularly such large, unusual sums, quickly and ultimately completely draining her bank account- were being sent.

4

21. Plaintiff could not have authorized these wire transfers because she was fraudulently induced to go to the Wells Fargo branch by the fraudster under the understanding that she was acting pursuant to the Bank's wishes.

22. Despite the unusual nature of these wire transfers, that Plaintiff had never initiated wire transfers before, and that Wells Fargo knew or should have known that these wire transfers were part of a social engineering fraud, Wells Fargo allowed these different wire transfers to occur, which resulted in the loss of Plaintiff's life savings.

23. Plaintiff never authorized these funds to be sent to the fraudster. She thought she was protecting her money to be returned to her accounts.

24. On July 12, 2022, the fraudster made a $10,000 cash advance from Plaintiff's Wells Fargo Propel American Express card which had expired in June of 2022. Wells Fargo allowed the cash advance to go through on an expired card.

25. When Plaintiff finally discovered that these transfers were fraudulent, she returned to Wells Fargo and spoke with some of the same individuals who had sent the wire transfers. They admitted that people were being scammed daily and advised Plaintiff to obtain a cashier's check to close the remaining $661 left in her account and put the money into a new account. If Wells Fargo's employees had told these facts to Plaintiff prior to allowing the wire transfers –which upon information and belief Wells Fargo representatives knew prior to the wire transfers - then Plaintiff would have avoided losing her life savings.

## COUNT I – UCC VIOLATIONS

26. Plaintiff hereby adopts and incorporates the allegations contained in Paragraphs 1-25 above.

27. Plaintiff did not authorize the wire transfers from her Wells Fargo accounts.

28. Further, Wells Fargo owed a duty to Plaintiff to authorize and verify wire transfers under the Uniform Commercial Code. Virginia Code § 8.4A-202.

29. Wells Fargo's procedures were not commercially reasonable under the circumstances of Plaintiff's wire transfers, which were only induced by the fraudster's scheme.

30. Wells Fargo breached its duties to Plaintiff by allowing the wire transfers to be sent while Wells Fargo knew or should have known that the Plaintiff did not authorize the wire transfers and that Plaintiff was being defrauded.

31. As a result, Plaintiff was damaged by losing her life savings.

WHEREFORE, Plaintiff prays for the following relief:

(a) Compensatory damages in the amount of $727,957.00;

(b) All remedies provided under the Uniform Commercial Code, Virginia Code § 8.4A-202, -204, including an award of costs and attorney's fees;

(c) Such other relief, legal or equitable, that may be provided under Virginia and Federal statutory law and regulations.

Abingdon: 1216658-1

A JURY TRIAL IS DEMANDED.

JANICE CARTER

By Counsel

Cameron S. Bell
  VSB No. 47685
PENNSTUART
P.O. Box 2288
Abingdon, Virginia  24212
Telephone:  276/628-5151
Facsimile:  276/628-5621
cbell@pennstuart.com

By  */s/ Cameron S. Bell*
      Cameron S. Bell

## CERTIFICATE OF SERVICE

I certify that on June 28, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

  */s/ Cameron S. Bell*
      Cameron S. Bell