IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| JANICE CARTER, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civil Action No.: 1:23-cv-00007 |
| | ) | |
| WELLS FARGO BANK, NATIONAL | ) | |
| ASSOCIATION, | ) | |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM OPINION

Plaintiff, Janice Carter, filed suit against Wells Fargo Bank, National Association ("Wells Fargo") alleging a violation of the Uniform Commercial Code ("UCC") after losing her life savings in a fraud scheme. Dkt. 27. Wells Fargo moves to dismiss Carter's Second Amended Complaint, arguing that her claims fail as a matter of law. Dkt. 30. Whether Carter has stated a claim in her Second Amended Complaint turns on when the bank or its customer bears the risk of loss for deposited funds fraudulently taken from a customer's account by a third party. I **GRANT in part** and **DENY in part** the motion to dismiss.

I.      **Complaint**

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). I accept all factual allegations in the complaint as true and draw all reasonable inferences in Carter's

favor. <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007). Legal conclusions, however, are not entitled

to the same presumption of truth. <u>Ashcroft</u>, 556 U.S. at 678; <u>Twombly</u>, 550 U.S. at 556 (noting

that while detailed factual allegations are not required, a plaintiff must still provide more than

labels, conclusions, or a "formulaic recitation of the elements of the cause of action").

 Carter alleges in her Second Amended Complaint that she was a customer at Wells Fargo

and was contacted in May 2022 by Martin, a fraudster who identified himself "as Special Agent

of the Wells Fargo Bank Fraud Department." Dkt. 27 at 2–3. Martin, the fraudster, told Carter

that her financial information, social security number, and other personal information had been

compromised and that the only remedy was for Carter "to remove money from the

'compromised' accounts, move them to a secure account, then transfer the money back to newly

formed accounts at Wells Fargo." <u>Id.</u> at 3. The fraudster told Carter she needed online banking

and proceeded to set up online banking for Carter's accounts. <u>Id.</u> Once the fraudster set up the

online banking, he made four transfers to Cristian Felipe Villamil Mogolon from Carter's

account in May 2022: $24,585 on May 5, $24,830 on May 9, $24,612 on May 10, and $48,530

on May 13 for a total of $122,557 in online transfers. <u>Id.</u> at 2–3. Carter alleges that she "did not

make a keystroke, click a button, sign a form, agree or otherwise discuss these transfers with

Wells Fargo" and therefore did not authorize the online transfers. <u>Id.</u> at 3.

 Carter alleges that the fraudster convinced her to make five wire transfers in person at a

Wells Fargo branch bank from May to July 2022: $20,400 on May 20, $155,000 on May 24,

$50,000 on June 6, $330,000 on July 6, and $40,000 on July 12, for a total of $595,400 in wire

transfers. <u>Id.</u> at 3–4. The fraudster instructed Carter to wire these funds to Coinflip through

Silvergate Bank. <u>Id.</u> at 4. Carter alleges that she "made these transfers under the belief that she

was protecting her hard-earned money from hackers of the Wells Fargo system." <u>Id.</u> Carter went

to her local Wells Fargo branch and spoke in person to three different Wells Fargo employees when she made these transfers, during which time she claims "it was clear that she was being scammed and was not authorizing the wire transfers." Id. Each time, the Wells Fargo employees asked Carter if she was familiar with Coinflip, and Carter said "no." Id. Further, Carter "could not articulate to Wells Fargo employees why sums - particularly such large, unusual sums, quickly and ultimately completely draining her bank account - were being sent." Id. Carter alleges that she "could not have authorized these wire transfers because she was fraudulently induced to go to the Wells Fargo branch by the fraudsters under the understanding that she was acting pursuant to the Bank's wishes." Id. at 5. Carter alleges that she had never initiated a wire transfer and that Wells Fargo "knew or should have known that these wire transfers were part of a social engineering fraud[.]" Id. Because of the transfers, Carter allegedly lost her life savings. Id. Carter also alleges that on July 12, 2022, after having over $700,000 fraudulently transferred from her accounts, Wells Fargo allowed a $10,000 cash advance made by the fraudster on her expired Wells Fargo Propel American Express card. Id. In total, Carter allegedly lost $727,957. Id. at 6.

Carter asserts a single claim against Wells Fargo under Va. Code § 8.4A-202 contending that Wells Fargo owed her a duty to authorize and verify the wire transfers, that Wells Fargo's procedures were not commercially reasonable under the circumstances, and that Wells Fargo breached its duties by allowing the wire transfers, online transfers, and cash advances when Wells Fargo knew or should have known that Carter was being defrauded. Id. Carter seeks a refund under Va. Code § 8.4A-204 of $727,957 taken from her accounts in damages plus costs and attorney's fees. Id.

II.     **Analysis**

UCC Article 4A governs funds transfers, which are a "series of transactions, beginning

with the originator's payment order, made for the purpose of making payment to the beneficiary

of the order." Va. Code § 8.4A-104. "Whether the bank or customer bears the risk of loss for a

fraudulent wire transfer is determined by the interlocking provisions" of Va. Code §§ 8.4A-202,

8.4A-203, and 8.4A-204. Essilor Int'l SAS v. J.P. Morgan Chase Bank, N.A., No. 22-cv-3361,

2023 WL 35176, at *7 (S.D.N.Y. Jan. 4, 2023). The customer bears the responsibility for

fraudulent transfers "authorized" under Va. Code § 8.4A-202(a) or "effective" under Va. Code

§ 8.4A-202(b). Va. Code § 8.4A-204. Conversely, the bank has responsibility for transactions

neither authorized nor effective. Id. As it relates to authorization, "[a] payment order received by

the receiving bank is the authorized order of the person identified as sender if that person

authorized the order or is otherwise bound by it under the law of agency." Va. Code § 8.4A-

202(a). As it relates to effectiveness,

> "[i]f a bank and its customer have agreed that the authenticity of payment orders
> issued to the bank in the name of the customer as sender will be verified pursuant
> to a security procedure, a payment order received by the receiving bank is
> effective as the order of the customer, whether or not authorized, if (i) the security
> procedure is a commercially reasonable method of providing security against
> unauthorized payment orders, and (ii) the bank proves that it accepted the
> payment order in good faith and in compliance with the security procedure and
> any written agreement or instruction of the customer restricting acceptance of
> payment orders issued in the name of the customer."

Va. Code § 8.4A-202(b).

a.  **Online Transfers**

Wells Fargo argues in its motion to dismiss that Carter's claim should be dismissed as it

relates to the online transfers because Carter's "allegations make clear that she did play a role in

authorizing the transfers by providing information to the fraudster to obtain on-line access to her

4

bank account for the stated purpose of transferring money out of her Wells Fargo account." Dkt.

31 at 6. Further, Wells Fargo argues that "[b]y providing access to her account under the

mistaken belief that the transfers were being made for her benefit, [Carter] either authorized the

transfers by her actions or is bound by the laws of agency for the fraudster's act of initiating the

wire transfers that [Carter] understood were being taken on her behalf." Id. at 7. Carter argues

that her claim is valid because she did not have online banking prior to these incidents, and she

"did not allege that she gave access to her accounts or authorized the fraudster to steal her

money." Dkt. 32 at 3–4.

Regarding whether Carter authorized the online transfers, she states that the fraudster

contacted her and said that to protect her money, Carter should move the funds from her

compromised account to a secure account and then transfer the money back to a new Wells

Fargo account. Dkt. 27 at 3. To accomplish this goal, the fraudster told Carter she needed to set

up online banking. Id. However, Carter alleges that the fraudster set up the online banking access

and then the fraudster, not Carter, made the four wire transfers from Carter's account. Id. at 2–3.

Additionally, Carter does not allege, and the facts do not point to, Carter having knowledge that

the fraudster would complete the transfers as her agent, without her authorization. While the

fraudster may have told Carter what steps were needed to "protect" her money, Id. at 3, the

allegations in the Second Amended Complaint do not show that Carter intended or understood

that the fraudster would initiate these wire transfers on her behalf. In fact, Carter unequivocally

states that she "did not make a keystroke, click a button, sign a form, agree or otherwise discuss

these transfers with Wells Fargo" and therefore did not authorize the transfers. Id.

Neither party has provided any authority which allocates the risk of loss between a bank

and its customer where a third party gains online access to an account without the knowledge of

either the bank or the customer. I conclude that Carter has alleged adequate facts at this stage to survive a motion to dismiss and to allow discovery to provide a more fulsome understanding of how the online account was established and what, if any, remedies Carter or Wells Fargo had.

Regarding whether the online transactions were effective such that Carter would bear the risk of loss, she alleges that Wells Fargo owed her a duty "to authorize and verify wire transfers" pursuant to Va. Code § 8.4A-202 and that "Wells Fargo's procedures were not commercially reasonable under the circumstances of [Carter's] wire transfers, which were only induced by the fraudster's scheme." Dkt. 27 at 6. Wells Fargo discusses the effectiveness of the online wire transfers for the first time in its reply brief by simply stating, "[t]here is no need for the Court to address whether the on-line wires were effective under Va. Code § 8.4A-202(b) because [Carter] authorized the transfers via her agreement to have the funds moved based on the representations of the third-party." Dkt. 33 at 4–5. Wells Fargo does not challenge at the motion to dismiss stage that the online transactions were not effective as to Carter, and I find that Carter has adequately pled that the online wire transfers were not effective. Accordingly, I **DENY** Wells Fargo's motion to dismiss as it relates to the online wire transfers.

### b. In-Person Transfers

Wells Fargo argues that because Carter "undisputed[ly] . . .authorized the in-person wire transfers by visiting the Wells Fargo branch and instructing Wells Fargo to make the wires[,]" she has failed to state a claim under § 8.4-202 regarding the in-person transfers. Dkt. 31 at 5. Further, Wells Fargo argues that Carter "attempts to avoid the application of Va. Code § 8.4A-202(a) by claiming that she did not authorize the funds to be sent to the fraudster; however, the UCC makes no such distinction regarding authorization." Id. The facts alleged in the Second Amended Complaint are clear that Carter went to her local Wells Fargo branch in person and

6

requested the transfers, but she argues that because "the fraudster induced her to make these transfers that she thought [were] protecting her money[,] [s]he did not authorize what actually happened." Dkt. 32 at 5. Carter also argues that Wells Fargo should have known that Carter was being scammed. Id. Carter relies on Precision Computer Services, Inc. v. Newtown Savings Bank, No. AANCV186029468S, 2021 WL 5370456 (Conn. Super. Ct. Oct. 26, 2021) for the proposition that if wire transfers are originated by a fraudster, they are not authorized even if a customer confirms the order. Id. at 4–5. In that case, a fraudster originated the payment order at issue that an authorized individual confirmed. Precision Computer Services, Inc., 2021 WL 5370456, at *7. The court found that the payment order was not an authorized order because it order did not originate from an authorized individual on the account. Id.

In her Second Amended Complaint, Carter alleges that the fraudster instructed her to make five wire transfers in-person at a Wells Fargo branch bank. Dkt. 27 at 3–4. Carter had never initiated a wire transfer and could not answer the questions of the Wells Fargo employees regarding where her money was going. Id. at 4. But, the allegations in the Second Amended Complaint are clear that Carter authorized the in-person transfers. She went to the bank in person and told the Wells Fargo employees where she wanted her money transferred. Although Carter may not have intended to transfer her money to the fraudster, she authorized the transactions. Unlike in Precision Computer Services, Inc., Carter originated the payment order at Wells Fargo, not the fraudster, and Carter authorized completion of the transaction. While Carter might have been influenced by the fraudster to make the transfer, she ultimately originated the transfer herself and therefore authorized it.

A bank is not responsible for fraudulent transfers if the transfer is "authorized" under Va. Code § 8.4A-202(a) or "effective" under Va. Code § 8.4A-202(b). Carter's authorization of the

transfer makes the effectiveness of Well's Fargo's procedures and its employees' actions irrelevant. Va. Code § 8.4A-204. Because Carter authorized the in-person wire transfers, she has failed to state a claim under §8.4-202. Accordingly, I **GRANT** Wells Fargo's motion to dismiss as it relates to the in-person wire transfers.

    c.  **Cash Advance on Credit Card**

        Wells Fargo argues in its motion to dismiss that Carter's UCC claim should be dismissed as it relates to the cash advance on the credit card because Carter makes only a single allegation in her Second Amended Complaint about the credit card. Dkt. 31 at 7. Wells Fargo further argues that the cash advance is not a funds transfer per Va. Code § 8.4A-104(a). Id. Carter did not address the cash advance on the credit card in her opposition to the motion to dismiss.

        In her Second Amended Complaint, the only reference that Carter makes to the credit card is that the fraudster allegedly "made a $10,000 cash advance from [her] Wells Fargo Propel American Express card which had expired in June of 2022." Dkt. 27 at 5. Carter does not allege sufficient facts to state a claim for relief that is plausible on its face. Iqbal, 556 U.S. at 678. To succeed on her claim for a refund, Carter must show that the cash advance was a wire transfer which was neither authorized nor effective. Carter only alleges that the fraudster took a cash advance from Carter's Wells Fargo Propel American Express card. Carter does not allege that the transaction was not authorized or effective and does not provide sufficient facts to plausibly establish that Wells Fargo is liable to refund the transferred amount. Id. Accordingly, I **GRANT** Wells Fargo's motion to dismiss as it relates to the cash advance on the credit card.

    **III.**    **Conclusion**

        I find that Carter has stated a claim for a refund of the online transfers, but has failed to state a claim regarding both the in-person wire transfers and the cash advance on her credit card.

Accordingly, I **GRANT in part** and **DENY** in part Wells Fargo's motion to dismiss. The case

will proceed as to the online transfers only.

Entered:  August 30, 2023

*Robert S. Ballou*

Robert S. Ballou
United States District Judge